IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RONNIE DEON FOOTS                                                  PLAINTIFF

v.                               Civil No. 4:16-cv-04044

VICTOR C. ROSE, Sheriff, Lafayette
County; THEARTICE EARLY, Lewisville
Police Department ("LPD"); CHIEF TUMBERLIN,
LPD; OFFICER COX, LPD; DR. AUTUEN;
and OFFICER CLARK                                      DEFENDANTS

**ORDER**

This is a civil rights action filed *pro se* by Plaintiff, Ronnie Deon Foots, under 42 U.S.C. § 1983. Currently before the Court are Motions for Summary Judgment filed by Defendants City of Lewisville, Arkansas, and Chief Jason Tomlin (ECF No. 30) and Defendants Victor C. Rose, Theartice Early, Dr. Antoon, Officer Clark, and Officer Cox (ECF No. 36). Plaintiff has filed a response. (ECF No. 42). Defendants City of Lewisville and Tomlin filed a Reply to Plaintiff's Response. (ECF No. 43). The Court finds this matter ripe for consideration.

**I. BACKGROUND**

Plaintiff filed his original Complaint on May 6, 2016, against Defendants Victor Rose, Theartice Early, Chief Tomlin, Dr. Antoon, and Officer Cox.[1] (ECF No. 1). On May 25, 2016, Plaintiff filed an Amended Complaint naming Officer Clark as a Defendant. (ECF No. 6). Plaintiff alleges claims for excessive force, denial of adequate medical care, and unconstitutional conditions of confinement. (ECF No. 6). At the time of the events in question, Defendant Tomlin was the Chief of Police for the City of Lewisville, Arkansas; Defendant Rose was the Sheriff of Lafayette County, Arkansas; Defendant Antoon was under contract to provide healthcare services to inmates

---
[1] Defendant Rose was mistakenly identified in Plaintiff's initial Complaint as the Sheriff of Hempstead County. Plaintiff also incorrectly named Defendant Tomlin as Tumberlin and Defendant Antoon as Autuen.

in the Lafayette County Detention Center ("LCDC"); and Defendants Early, Cox, and Clark were employees of the Lafayette County Sheriff's Department.[2] Plaintiff is suing Defendants in both their official and individual capacities. (ECF No. 6). Plaintiff is no longer incarcerated.

In 2007, Plaintiff suffered a gunshot wound to the head and as a result suffers from periodic seizures. Plaintiff takes the medication Dilantin to control the seizures. Plaintiff also states he has extreme difficulty standing, walking, and keeping his balance. He uses a cane and wheelchair. (ECF No. 6).

On December 10, 2012, Defendants Clark, Cox, and Tomlin arrived at Plaintiff's residence with a warrant for his arrest for delivery of a controlled substance. Plaintiff claims he told the Defendants to come in and then informed them he had cocaine in his sock. (ECF No. 42, p. 2). Plaintiff states that Defendant Tomlin instructed him to get down on the floor but claims he could not immediately do so because of his physical disabilities. Plaintiff alleges Defendant Tomlin was aware of his physical limitations prior to his arrest due to Plaintiff's previous interactions with Defendant Tomlin. (ECF No. 32-1, pp. 13, 11-24).

Plaintiff alleges that during the course of his arrest Defendant Tomlin used excessive force when he "turned me upside down by my feet and hit my head[,]" causing Plaintiff to suffer a seizure which lasted two to three minutes. (ECF No. 32-1, pp. 13, 11-24). Plaintiff also claims Defendants Cox and Clark used excessive force against him when they "ignored the facts I was disabled and couldn't walk without my wheelchair and that I had seizures[,]" claiming "their response was to drag me, literally, out of my house." (ECF No. 6, p. 4). Plaintiff claims he asked for his seizure medication and wheelchair and Defendant Tomlin told him "they will take care of

---

[2] The case caption incorrectly refers to Defendants Early, Cox, and Tomlin as being members of the City of Lewisville Police Department. Only Defendant Tomlin is associated with the police department. All other defendants are employed by or under contract with the Lafayette County Sheriff's Department.

2

you at the county jail." (ECF No. 32-1, pp. 20, 14-23). Plaintiff was subsequently transported by Defendant Cox to the LCDC.

Plaintiff alleges that once he was booked into the LCDC he was placed in A-Pod. Plaintiff claims he then informed Ms. Cooper, an LCDC employee not named in this lawsuit, that:

> I needed my seizure medication and my wheelchair . . . I repeatedly told them that my medication was at my house, along with my wheelchair, and that my grandmother would bring them both to me. The jailers said, once again, that they would have to run it by Lt. Theartice [Early]. As the days passed on, I received no help or relief regarding my meds and my wheelchair. I continuously spoke to deputies through the intercom and I asked them to speak to Sheriff Rose. The deputies told me that Sheriff Rose was aware of me, but had not given them orders or permission to do anything. Sheriff Rose, along with Lt. Theartice [Early] simply ignored the fact that I needed my wheelchair and seizure medication.

(ECF No. 6, pp. 4-5).

Several days later, Plaintiff asked for a handicap accessible shower with a seat because A-Pod did not have handicap accessible shower facilities. According to Plaintiff, when he complained about not having a handicap accessible shower "they ignored my situation, and only gave me a small tub to bathe with that would only hold about two (2) gallons of water." (ECF No. 6, p. 5). Plaintiff claims he tried to use the shower in A-Pod without a shower seat because "the small tub of water was ineffective in cleaning myself." (ECF No. 6, p. 8). He alleges he lost his balance, fell, and hit his head. Plaintiff claims that his head was bleeding and that he had a "slight" seizure. Plaintiff states that instead of calling for an ambulance, the jailers contacted Defendant Early. Plaintiff alleges that he was then put into a wheelchair and taken to "isolation, with my head still bleeding, and me being dizzy" in accordance with orders from Defendant Early. (ECF No. 6, p. 6). Plaintiff claims he was not examined by medical personnel, but that Defendants Rose and Early:

> saw that my head was busted and bleeding, and their solution to that was to put me in isolation. In fact; it became clear to me that Sheriff Rose and Lt. Theartice [Early]

3

> had ordered their deputies to put me in isolation for the purpose of hiding me from the inmate population, who had witnessed my busted head from falling in the shower. They left me in isolation for a whole week without medical attention, and without my seizure meds.

(ECF No. 6, p. 6).

Plaintiff claims that Defendants Rose and Early intentionally housed him in a pod without handicap accessible shower facilities knowing that he could not stand for an extended amount of time. Plaintiff states he had previously been housed in D-Pod, where there is a shower with a seat for people who are disabled. Plaintiff states that at some point "Sgt. Cooper[3] began allowing me to take showers in the intake because they had a handicapped seat in the shower stalls" but that he "still had to hobble back and forth to my Pod with great difficulty and pain." (ECF No. 6, p. 8).

Plaintiff further claims that on another occasion he stood up and his "legs gave out." (ECF No. 6, p. 6). Plaintiff states that he fell, hit his head, and began to have a seizure. (ECF No. 6, p. 6). An ambulance was called and Plaintiff was taken to the hospital. He claims the nurse told him his "Dilantin level in his blood was low." Plaintiff then requested a MRI and an x-ray because of his recent falls. According to Plaintiff, the nurse informed him they could not conduct those scans without permission from the LCDC. Plaintiff states that his Dilantin dosage was increased and he was given pain medication while in the hospital.

Once he returned to the LCDC, Plaintiff claims he was:

> finally seen by the Jail's doctor. Dr. Antune prescribed a generic medication for epilepsy, and some type of muscle relaxer. I asked Dr. Antune what he was prescribing, because it was not Dilantin. Dr. Antune's response was; 'It is something new for 2012, and that Dilantin had played out.' That night, or the next night, after taking that medication, I had another seizure.

---

[3] Sergeant Cooper is not a defendant in this lawsuit.

(ECF No. 6, p. 7). Plaintiff claims Defendant Early once again did nothing to assist him. Plaintiff further alleges that after he started taking the medication prescribed by Defendant Antune he began to lose weight, started sleeping a great deal, and felt weak.

On another occasion, Plaintiff claims he "blacked out" and Defendant Early advised the jailers "to just leave me in my cell when situations such as this arose, as if ignoring them, (my medical issues)[.]" (ECF No. 6, p. 8). Plaintiff claims he was left on the floor until other inmates helped him back onto his bed. Plaintiff acknowledges that after this incident he was allowed to use a wheelchair at the jail but claims "they continued to make me use that small tub of water to bathe with." (ECF No. 6, p. 8).

Plaintiff also claims that at some point during his incarceration in the LCDC he noticed blood in his urine. He states that he informed jail staff but that:

> Their only response was to say; "We'll run it by the Lt. [Early]." There was no immediate response to this critical occurrence. Days passed and I stopped seeing blood in my urine, but then, one day I noticed blood in my boxer shorts.

(ECF No. 6, p. 8). Plaintiff was then taken to the hospital. He claims the nurse at the hospital told him there was not any blood present in his urine and that he "would have to come right away" when he saw blood in his urine so medical staff could determine where it came from "rather than waiting three days to be checked out, which had just occurred." (ECF No. 6, p. 8). Plaintiff alleges that the hospital doctor concluded he was probably passing kidney stones.

Plaintiff further alleges there was another incident at the LCDC where he again noticed blood in his urine and passed out in the bathroom. He claims another inmate came to check on him and found him on the bathroom floor. Plaintiff alleges he once again informed the deputies at the LCDC that the nurse at the hospital had told him he needed to be taken to the hospital as soon as he noticed blood in his urine "but nothing was done to help me." (ECF No. 6, p. 9).

5

Plaintiff claims that a few weeks later he "felt light headed, and passed out while trying to use the rest room." (ECF No. 6, p. 9). According to Plaintiff, this time he was taken to the hospital. He again asked for an x-ray or MRI but instead was given pain medication and sent back to the LCDC. Plaintiff claims the nurse at the hospital checked his blood and said there was no medication in his system. Based on this information, Plaintiff claims Dr. Antoon had been giving him "fake medication." (ECF No. 6, p. 10). Plaintiff claims that sometime after this last visit to the hospital, Defendant Early "approved for them to change my housing to Pod-D, which had the handicapped shower stall. I continued to suffer pain, and I reported it to the deputies, but nothing was done to help me." (ECF No. 6, p. 10).

Plaintiff states that on May 3, 2013, he was sent to the ADC's Diagnostic Unit in Malvern, Arkansas. He states that the ADC nurse found blood in his urine. Plaintiff claims that he was prescribed Dilantin for his seizures and antibiotics for the blood in his urine.

In their Motions for Summary Judgment, Defendants assert they are entitled to summary judgment because: (1) Plaintiff was not subjected to excessive force during his arrest; (2) Defendants were not deliberately indifferent to Plaintiff's medical needs; (3) Plaintiff was not subjected to unconstitutional conditions of confinement; (4) they are entitled to qualified immunity; and (5) there is no basis for official capacity liability.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with

the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

As noted above, Defendants argue they are entitled to qualified immunity. When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997). Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). It entitles an individual to avoid the burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings. *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1160 (8th Cir. 2003).

7

Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). First, the court must determine whether the facts demonstrate a deprivation of a constitutional right. *Id.* (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). If so, the court must decide whether the implicated right was clearly established at the time of the deprivation. *Id.* To determine if Plaintiff's right was clearly established at the time of the alleged deprivation, the Court "must . . . examine the information possessed by the governmental official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law." *Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, the Court must ask whether the law at the time of the events in question gave the officers "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730 (2002). Because the issue of qualified immunity turns in part on whether the facts indicate that a constitutional deprivation has occurred, the Court will address Defendants' qualified immunity claims in the discussions of each alleged constitutional violation.

**A. Excessive Force**

Plaintiff claims Defendants Tomlin, Cox, and Clark used excessive force against him when they arrested him at his home on December 10, 2012.

Where an excessive force claim arises in the context of an arrest, it is most properly characterized as one invoking the protections of the Fourth Amendment. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). In evaluating an excessive force claim under

the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The application of this standard requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Further, the Eighth Circuit has made clear that the "weaknesses" of an arrestee should be taken into consideration when determining what force is reasonable during an arrest. *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).

Plaintiff alleges he is physically disabled and that Defendant Tomlin was aware of his physical limitations prior to his arrest. According to Plaintiff, he was seated on the couch in his home and did not resist arrest when Defendants Tomlin, Cox, and Clark arrived. Plaintiff states he informed the officers he had cocaine in his sock and claims he could not comply with the Defendants' order to get down on the floor because of his physical limitations. Plaintiff claims that in spite of Defendant Tomlin's knowledge of his special needs, Defendant Tomlin picked Plaintiff up and held "him upside down by his feet" presumably to get the cocaine out of his sock. As a result of Defendant Tomlin's actions, Plaintiff states that he hit his head and then had a seizure. Plaintiff further claims that after witnessing the seizure, Defendants Cox and Clark put Plaintiff on the ground, picked him up, and "dragged him" to the patrol car.

There is no evidence to suggest Plaintiff was resisting arrest or that he posed any threat to the safety of Defendants Tomlin, Cox, or Clark during the arrest. Accordingly, the Court

concludes there is a question of material fact as to whether the alleged use of force by Defendants Tomlin, Cox, and Clark during Plaintiff's arrest was objectively reasonable.

Turning to the issue of qualified immunity, the facts when viewed in a light most favorable to Plaintiff sufficiently demonstrate a deprivation of Plaintiff's right to be free from excessive force during his arrest. Accordingly, the first prong of the qualified immunity analysis is satisfied. Moving on to the second prong, there is no question that in December of 2012 the law clearly established that an arrestee had a right to be free from the use of excessive force. *See Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002). Therefore, Defendants Tomlin, Cox, and Clark are not entitled to qualified immunity in regard to this claim.

Accordingly, summary judgment is denied as to the claim of excessive force.

**B. Denial of Medical Care**

Plaintiff claims that Defendants denied him adequate medical care in violation of his constitutional rights.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v.*

*VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Plaintiff has been diagnosed by a physician as requiring treatment for his seizures. Accordingly, it is clear that Plaintiff suffers from objectively serious medical needs.

Having found that the first prong of the deliberate indifference standard has been satisfied, the Court will now discuss whether the second prong—that the prison officials actually knew of but deliberately disregarded Plaintiff's serious medical needs—has been satisfied. For the sake of clarity, the Court will discuss this issue as well as the attendant issue of qualified immunity in regard to each Defendant or group of Defendants separately.

   1. **Defendants Tomlin, Cox, and Clark**

Plaintiff claims Defendants Tomlin, Cox, and Clark denied him adequate medical care when they failed to give him his seizure medication during and shortly after his arrest and when they refused to take his medication and wheelchair to the LCDC.[4]

As previously stated, Plaintiff's seizures are a serious medical need and he has therefore established the objective component of the deliberate indifference standard. The question then becomes whether Defendants Tomlin, Cox and Clark's conduct during the arrest constitutes more than gross negligence. "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Pietrafeso v. Lawrence*, 452 F.3d 978 (8th Cir. 2006) (quoting *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995)).

---

[4] Because the alleged violation occurred after Plaintiff was arrested, it is properly analyzed under the Due Process Clause of the Fourteenth Amendment. *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 905 n.3 (8th Cir. 1999). That being said, the Eighth Circuit has held that the due process analysis applicable in this situation parallels the Eighth Amendment deliberate indifference standard because pretrial detainees are entitled to the same protection as imprisoned convicts. *Davis v. Or. Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010).

Plaintiff alleges that Defendant Tomlin was fully aware of his physical condition and medical needs prior to his arrest. Although the record is not clear whether Defendants Cox and Clark were aware of Plaintiff's medical needs when they assisted with his arrest, it is evident from the record that they were present when Plaintiff hit his head and had a seizure. When Plaintiff asked Defendants to give him his seizure medication and bring his wheelchair to the LCDC, Plaintiff alleges Defendant Tomlin responded by stating "they will take care of you at the county jail." (ECF No. 32-1, pp. 20, 14-23). The record reflects Defendant Cox then transported Plaintiff, without his medication or wheelchair, directly to the LCDC. For the present purposes, the failure of these Defendants to provide Plaintiff with his medication and failure to take Plaintiff's medication and wheelchair to the LCDC after witnessing the seizure creates an issue of material fact as to whether Defendants Tomlin, Cox, and Clark knew of but deliberately disregarded Plaintiff's serious medical needs.

The Court now turns to the issue of whether these Defendants are entitled to qualified immunity in regard to this claim. Having determined there are issues of material fact relation to whether Plaintiff's constitutional right to adequate medical care was denied by Defendants Tomlin, Cox, and Clark, the Court will now address whether the second prong of the qualified immunity standard has been satisfied. The case of *Pietrafeso v. Lawrence*, decided by the Eighth Circuit six years prior to Plaintiff's arrest, made clear that intentionally interfering with treatment or medication that has been prescribed to an inmate constitutes deliberate indifference. 452 F.3d 978, 983 (8th Cir. 2006). Accordingly, the Court finds that a reasonable government official would have known that refusing to provide Plaintiff with his seizure medication and wheelchair violated the law. Therefore, Defendants Tomlin, Cox, and Clark are not entitled to qualified immunity.

Accordingly, summary judgment is denied with respect to the claim of denial of medical care.

## 2. Defendant Antoon

Plaintiff alleges Defendant Antoon denied him adequate medical care when he changed his seizure medication, failed to order x-rays and a MRI, and gave him "fake" medication.

There is no question Defendant Antoon was aware of Plaintiff's medical issues and needs. However, other than Plaintiff's bare allegation that Defendant Antoon gave him "fake" medication there is no evidence to support a finding that Defendant Antoon disregarded Plaintiff's medical needs. Defendant Antoon submitted an affidavit specifying the various seizure medications he prescribed Plaintiff such as Phenytoin and Carbamazepine. According to Defendant Antoon, Phenytoin is the generic form of Dilantin and Carbamazepine is the generic form of Tegretol. (ECF No. 38-2). In addition, the fact that Defendant Antoon changed Plaintiff's medication and did not order additional tests for Plaintiff does not establish deliberate indifference. Mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *See Phillips v. Jasper Cnty Jail*, 437 F.3d 791 (8th Cir. 2006) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Although Defendant Antoon was aware of Plaintiff's serious medical needs, the record clearly shows that he did not disregard those needs. Accordingly, Plaintiff has failed to show that the second prong of the deliberate indifference standard has been satisfied. Therefore, Defendant Antoon is entitled to summary judgment on this claim as there are no genuine issues of material fact remaining. In light of this finding, the Court need not reach the issue of whether Defendant Antoon is entitled to qualified immunity.

### 3. Defendants Rose and Early

Plaintiff alleges Defendants Rose and Early denied him medical care on multiple occasions. Plaintiff claims he made several requests to Defendants Rose and Early when he arrived at the LCDC regarding his need for his seizure medication and his wheelchair. According to Plaintiff's Amended Complaint, "Sheriff Rose, along with Lt. Theartice [Early] simply ignored the fact that I needed my wheelchair and seizure medication." (ECF No. 6, pp. 4-5).[5] Plaintiff further claims that on at least two occasions he suffered head injuries and that although Defendants Rose and Early were made aware of Plaintiff's injuries, Plaintiff was not seen by medical staff or taken to a hospital. Plaintiff also alleges he complained about blood in his urine to Defendants Rose and Early but was once again ignored.

When viewing the facts in a light most favorable to Plaintiff, it is clear that Defendants Rose and Early knew of Plaintiff's medical needs. Although Plaintiff acknowledges he was taken to the hospital for evaluation on three occasions after suffering seizures and complaining about blood in his urine a second time, the Court finds there is an issue of material fact as to whether Defendants Rose and Early disregarded Plaintiff's serious medical needs.

The Court will now turn to the issue of whether Defendants Rose and Early are entitled to qualified immunity. Defendants argue that even if Plaintiff has established a constitutional violation, they are entitled to qualified immunity. It is well established that it is unconstitutional for prison officials to act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Eighth Circuit has also recognized that a reasonable officer would know that it is unlawful to delay medical treatment for a detainee exhibiting obvious signs of medical distress. *Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006).

---

[5] Defendants argue that Plaintiff did not make any specific allegations against Defendant Rose. However, a review of Plaintiff's Amended Complaint clearly shows Plaintiff did make sufficient allegations against Defendant Rose.

A factual determination that an official had the requisite knowledge of a substantial risk, for purposes of an Eighth Amendment deliberate indifference claim, may be inferred from circumstantial evidence, or from the very fact that the risk was obvious. *Schaub v. VonWald*, 638 F.3d 905 (8th Cir. 2011). Given this precedent, the Court finds that a reasonable officer familiar with Plaintiff's medical needs—as Defendants Rose and Early were—would have known that a constitutional deprivation would occur if they failed to provide medical care to Plaintiff after he suffered seizures and head injuries while incarcerated at the LCDC.[6] Therefore, the Court finds that Plaintiff's right to adequate medical care was clearly established and neither Defendant Rose nor Defendant Early are entitled to qualified immunity.

Accordingly, summary judgment is denied on the claim of inadequate medical care against Defendants Rose and Early.

**C. Conditions of Confinement**

Plaintiff alleges he was subjected to unconstitutional conditions of confinement because Defendants Rose and Early did not allow him to use the handicap accessible shower facility and instead gave him a small bucket with which to bathe.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution "'does not mandate comfortable prisons,' but neither does it permit

---

[6] Defendants argue Defendant Rose is a supervisor and cannot be held liable under a theory of *respondeat superior*. While prison supervisors cannot be held liable under Section 1983 on a theory of *respondeat superior*, they can incur liability when their inaction amounts to deliberate indifference to or tacit authorization of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 842, 114 (1970) (noting that in an Eighth Amendment claim, "it is enough that the official acted *or failed to act* despite his knowledge of a substantial risk of serious harm.") (emphasis added); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (a supervisor is liable for an Eighth Amendment violation "when the supervisor's corrective inaction constitutes deliberate indifference").

inhumane ones." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 339 (1981)). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 347.

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Further, "[t]he defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id*. Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id*.

It is clear that basic personal hygiene falls within "the minimal civilized measure of life's necessities" to which a prisoner is entitled. *See Farmer v. Brennan,* 511 U.S. at 834. However, the Eighth Circuit has held that the denial of shower privileges for a short period of time does not constitute an Eighth Amendment violation. *Abernathy v. Perry*, 869 F.2d 1146, 1149 (8th Cir. 2008). Other courts have upheld longer denials of shower privileges as constitutional. *See, e.g. Waller v. Rice et al,* 2018 WL 1092346, (W.D. Ark. 2018) (holding a ten-day denial of shower privileges constitutional); *McCoy v. Goord*, 255 F. Supp. 233, 260 (S.D.N.Y. Mar. 25, 2003) (holding that "a two week suspension of shower privileges does not suffice as a denial of basic hygiene needs") (internal quotation omitted).

16

The Court finds that Plaintiff has failed to demonstrate he was denied the minimal measure of life's necessities when Defendants Rose and Early provided him with a small tub of water for bathing. Plaintiff has not alleged he was forced to go without a shower or bathing for any extended period of time nor has he alleged any injury arising from using the small tub of water.[7] In light of this finding, the Court need not reach the issue of whether Defendants Rose and Early are entitled to qualified immunity.

Accordingly, Defendants Rose and Early are entitled to summary judgment on the conditions of confinement claim.

### D. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against the City of Lewisville and Lafayette County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Defendants City of Lewisville and Lafayette County under section 1983, "plaintiff must show that

---

[7] Plaintiff alleges he decided that the small tub was "ineffective in cleaning myself" so he decided to use the shower in A-Pod without a shower seat and lost his balance, fell, and hit his head. (ECF No. 6, p.8).

a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Plaintiff has not alleged that any policy, practice, or custom of the City of Lewisville or Lafayette County contributed in any way to the alleged violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of law. *Id.*

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motions for Summary Judgment (ECF Nos. 30, 36) should be and hereby are **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted as to Plaintiff's official capacity claims. Therefore, they are **DISMISSED WITH PREJUDICE**. Further, summary judgment is granted as to Plaintiff's claims for denial of medical care against Defendant Antoon. Therefore, they are **DISMISSED WITH PREJUDICE**. Summary judgment is granted as to Plaintiff's claims against Defendants Rose and Early for unlawful conditions of confinement. Therefore, they are **DISMISSED WITH PREJUDICE**. However, summary judgment as to Plaintiff's claims for excessive force and denial of medical care against Defendant Tomlin is denied and those claims remain for trial. Likewise, summary judgment as to Plaintiff's claims against Defendants Clark and Cox regarding excessive force and denial of medical care is denied and those claims remain for trial. Finally, summary judgment as to Plaintiff's claims against Defendants Rose and Early for denial of medical care is denied and those claims remain for trial.

**IT IS SO ORDERED**, this 13th day of March 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge